IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DISTRICT

DAVID HEWITT II, AARON JOHNSON,
JAMES LANE, RALPH LAROSA JR.,
and JERRY OSBORNE, individually and
on behalf of all others similarly situated                                                       PLAINTIFFS

v.                                  Case No. 2:12-CV-02152 PKH

GERBER PRODUCTS COMPANY
d/b/a NESTLE' INFANT NUTRITION
d/b/a NESTLE' NUTRITION USA
d/b/a NESTLE' NUTRITION USA –
INFANT NUTRITION d/b/a
NESTLE' NUTRITION USA –
PERFORMANCE NUTRITION                                                                          DEFENDANT

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND

### I.
### INTRODUCTION

This is a collective action brought by Plaintiffs on behalf of themselves and other similarly-situated employees who are or were employed by Defendant in its Fort Smith plant and who were not compensated for all hours worked in violation of Arkansas law. The action was originally filed in the Circuit Court of Sebastian County, Arkansas but removed by Defendants to the United States District Court, Western District of Arkansas, Fort Smith District.

Defendant operates a baby food manufacturing and processing facility in Fort Smith, Arkansas. Defendant regularly requires its hourly employees to don protective sanitation clothing and equipment prior to clocking in, and doff the same gear after clocking out; and require certain

1

workers to continue working through their lunch break. As a consequence of the Defendant's deliberate requirements, employees are not paid for the "off the clock" work time. As a result, the Defendant has knowingly received the benefit of tens of thousands of hours of work, for which it has not compensated its employees. Most of this uncompensated work is performed at overtime rates. Such wage practices are proscribed by the Arkansas Minimum Wage Act (Ark. Code Ann. §11-4-201, *et seq.*)(the "AMWA") and state common law. Plaintiffs seek to recover, for themselves and for other similarly-situated, back pay and overtime wages as required by law as well as injunctive relief.

## II.
## ARGUMENT AND AUTHORITIES

The Defendant removed this case from Arkansas state court pursuant to 28 U.S.C. § 1441.[1] The statute permits removal of cases "of which the district courts of the United States have original jurisdiction."[2] "The removing party bears the burden of proof regarding the existence of federal subject matter jurisdiction."[3] The Eighth Circuit has warned that "the nature of federal removal jurisdiction–restricting as it does the power of the states to resolve controversies in their own courts–requires strict construction of the legislation permitting removal."[4]

---

[1] Notice of Removal (Doc. 1), 2 (7/6/2012).

[2] 28 U.S.C. § 1441(a).

[3] *City of Vestavia Hills v. General Fid. Ins. Co.*, 676 F.3d 1310, 1313 n.1 (11th Cir. 2012).

[4] *Nichols v. Harbor Venture*, 284 F.3d 857, 861 (8th Cir. 2002).

The Defendant cites two bases for removal: preemption under the Labor Management Relations Act and diversity jurisdiction.[5] The Defendant has not met its burden to prove that either of these bases confers original jurisdiction of this matter on this Court.

A.  **Labor Management Relations Act**

As grounds for removal, Defendants assert that Plaintiffs' claim are preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. §185, because the claims are allegedly "based upon or require interpretation of, a collective bargaining agreement"[6] As discussed below, Plaintiffs' claims are not preempted because they are legally and factually independent of the collective bargaining agreement. Moreover, this collective action is brought on behalf of current and former employees of Defendant, many of whom have never been members of the union. Therefore, any argument that the claims of non-union employees are preempted is fundamentally flawed.

1.  **§ 301 of the Labor Management Relations Act Does Not Preempt Claims that Arise Independently of Collective Bargaining Agreements.**

Section 301(a) of the Labor Management Relations Act provides, in relevant part:

Suit for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined by this chapter . . . may be brought in any district court of the United States having jurisdiction of the parties . . .[7]

The Supreme Court has interpreted that language as a mandate to "fashion a body of federal law for the enforcement of these collective bargaining agreements."[8] To that end, the Supreme Court has

---

[5] Notice of Removal (Doc. 1), 4 (7/6/2012).

[6] Notice of Removal (Doc. 1), ¶¶ 16, 17, 18, 19, pp. 4,5 (7/6/2012).

[7] 29 U.S.C. § 185(a).

[8] *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403 (1988) (quoting *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 451 (1957)).

held that "if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is pre-empted and federal labor-law principles–necessarily uniform throughout the Nation–must be employed to resolve the dispute."[9]

However, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301,"[10] and "a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights independent of that agreement" in state court.[11] In fact, preemption analysis is to be undertaken "with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."[12] This is especially true of state labor laws, of which the Supreme Court has said, "pre-emption should not be lightly inferred in this area, since the establishment of labor standards falls within the traditional police power of the state."[13] This embodies the principle that "it would be inconsistent with congressional intent under [§ 301] to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract."[14]

The key question in a preemption analysis under § 301, then, is whether the rights asserted are "non-negotiable state-law rights . . . independent of any right established by contract, or, instead

---

[9] *Lingle*, 486 U.S. at 405-406.

[10] *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 397 n.10 (1987) (quoting *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 211 (1985)).

[11] *Caterpillar*, 482 U.S. at 396.

[12] *Altria Group, Inc. v. Good*, 129 S. Ct. 538, 543 (2008) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, (1947)).

[13] *Lingle*, 486 U.S. at 412.

[14] *Lueck*, 471 U.S. at 212.

. . . inextricably intertwined with consideration of the terms of the labor contract."[15] Claims are "independent" for this purpose if they "devolve on [employees] as individual workers, not as members of a collective organization."[16] The Eighth Circuit addressed the distinction between dependent and independent claims in *Williams v. NFL*.[17]

The *Williams* court observed that a state law claim could be preempted under § 301 in one of two ways: the claim could be "based on a provision of the CBA [collective bargaining agreement]," or it could be "dependent on an analysis of the relevant CBA."[18] "Analysis" of the collective bargaining agreement means more than mere reference to it. "An otherwise independent claim will not be preempted if the CBA need only be consulted during its adjudication. . . . Rather, the crucial inquiry is whether resolution of a state-law claim depends upon the meaning of a CBA."[19] Even though the issue in *Williams*–drug testing of employees–was directly addressed by the parties' collective bargaining agreement, the court noted that "[t]he NFL does not point to a specific provision . . . which must be *interpreted*," and held that the employees' state law claims were not preempted.[20]

Even questions that do require interpretation of a collective bargaining agreement do not warrant preemption if they are raised as defenses. The Supreme Court has held that

---

[15] *Id*. at 213.

[16] *Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 745 (1981).

[17] 582 F.3d 863 (8th Cir. 2009).

[18] *Williams*, 582 F.3d at 874 (quoting *Brogan v. Gen. Motors Corp.*, 500 f.3d 828, 832 (8th Cir. 2007) (internal alterations omitted)).

[19] *Id*. at 876-877 (quoting *Trustees v. Superior Waterproofing, Inc.*, 450 F.3d 324, 330 (8th Cir. 2006)) (internal marks omitted).

[20] *Williams*, 582 F.3d at 877 (emphasis added).

> It is true that when a defense to a state claim is based on the terms of a collective-bargaining agreement, the state court will have to interpret that agreement to decide whether the state claim survives. But the presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule -- that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court. . . . [A] defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law.[21]

Therefore, claims under state law that arise independently of any collective bargaining agreement and do not require the court to interpret the terms of such an agreement are not preempted under § 301, regardless of any defenses raised.

### 2. The Arkansas Minimum Wage Act Creates Rights that are Independent of and Supercede any Collective Bargaining Agreement.

The Arkansas Minimum Wage Act creates rights to minimum wages and overtime that do not depend on collective bargaining agreements and cannot be waived. The Act mandates that "Any employer who pays any employee less than minimum wages, *including overtime compensation*, . . . as provided in this subchapter *shall* be liable to the employee affected . . .."[22] This minimum wage provision applies to all time employees spend working for the benefit of their employer. The definition of "employ" under the Act is "to suffer or permit to work."[23] The Administrative Regulations of the Arkansas Department of Labor elaborate: "Work not requested but suffered or permitted is work time. . . . The employer knows or has reason to believe that [the employee] is

---

[21] *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398-399 (1987).

[22] Ark. Code Ann. § 11-4-218(a)(1) (emphasis added).

[23] Ark. Code Ann. § 11-4-203(2).

continuing to work and the time is working time."[24] No reference to a collective bargaining agreement or any other contract is necessary to establish when and to what extent an employer is liable under the statute.

As the Defendant points out, the Arkansas law is not intended "to interfere with, impede, or in any way diminish the right of employers and employees to bargain collectively." Ark. Code Ann. § 11-4-205. However, it is equally true that collective bargaining agreements cannot interfere with or impede the provisions Arkansas Minimum Wage Act. The Act states that "[a]ny agreement between the employee and employer to work for less than minimum wages shall be no defense" to actions brought under the Act.[25] This language appears in the same section, quoted above, that includes overtime within the definition of "minimum wages." Therefore, the AMWA creates a non-negotiable right to minimum wages and overtime for all hours worked.

That employees' overtime rights are not waiveable, even under a collective bargaining agreement, is made doubly clear by § 11-4-211, which makes specific exceptions to the overtime requirement:

> Except as otherwise provided in this section and §§11-4-210 and 11-4-212, no employer shall employ any of his or her employees for a workweek longer than forty (40) hours unless the employee receives compensation for his or her employment in excess of the hours above specified at a rate of not less than one and one-half (1 1/2) times the regular rate of pay at which he or she is employed.[26]

If the General Assembly had intended to make an exception for § 11-4-205, the collective bargaining section, it clearly would have done so in the same way it did with § 11-4-210 and § 11-4-212.

---

[24] Ark. Adm. Reg. Labor Code 010.14-108A.1,3.

[25] Ark. Code Ann. § 11-4-218(b).

[26] Ark. Code Ann. § 11-4-211.

Instead, the plain language of the statute states that employers must pay employees minimum wages, including overtime, for *all* hours worked, regardless of *any* agreement between the employer and employees.

> 3. **States Interpreting Statutes Similar to the AMWA have Found that Claims Arising Thereunder are not Preempted by Federal Law.**

State and federal courts in New Mexico have interpreted a statute very similar to the AMWA, under circumstances very similar to those presented here, and concluded that employees' state-law wage claims were not preempted by § 301. In *Self v. United Parcel Services, Inc.*,[27] the New Mexico Supreme Court considered the claims of UPS drivers under the New Mexico Minimum Wage Act.[28] In finding that the claims were not subject to preemption, the court observed that the New Mexico Minimum Wage Act "does not pose any questions of law that require interpretation of the collective-bargaining agreement. The Minimum Wage Act conveys rights in the form of minimum standards that the legislature intended all state workers to enjoy, without regard to a worker's relationship with a union or her or his contract with the employer."[29] The New Mexico Supreme Court reached its result despite the fact that the New Mexico Minimum Wage Act contains language identical to that found in Ark. Code Ann. 11-4-205: "Nothing in this act shall be deemed to interfere with, impede or in any way diminish the right of employees to bargain collectively with their employers."[30]

---

[27] 126 N.M. 396, 970 P.2d 582 (1998).

[28] *Id.*

[29] *Id.*

[30] N.M. Stat. Ann. § 50-4-28.

The U.S. District Court for the District of New Mexico subsequently adopted the *Self* court's sound reasoning in *Cruse v. St. Vincent Hospital*.[31] In *Cruse*, the plaintiffs brought a collective action against their employer alleging both state wage law violations and unjust enrichment. The court determined that § 301 did not preempt either claim, reasoning that "while information regarding the terms and existence of the [collective bargaining] Agreements may be relevant background information, none of that information is essential to Plaintiffs' claim."[32]

The Eastern District of Wisconsin has reached the same conclusion under that state's minimum wage law. In *Williams v. C & D Technologies, Inc.*,[33] the plaintiffs alleged that the payment scheme provided by their collective bargaining agreement was in violation of Wisconsin law. The court found that "§ 301(a) does not provide a basis for federal jurisdiction, even though this case might at some point require a court to interpret the collective bargaining agreement."[34] The presence of a collective bargaining agreement was less important than the fact that "Wisconsin law provides an independent source of rights, and if Wisconsin law requires C & D to pay plaintiffs for their short breaks, C & D can't use the collective bargaining agreement as a defense to a claim brought under Wisconsin law."[35]

### 4. The Plaintiffs' Claims are Independent of the Collective Bargaining Agreement and Not Preempted by Federal Law.

In the present case, the Plaintiffs' claims arise from no source other than Arkansas law. The rights of the Gerber workers to be paid for work that they must perform prior to clocking in, after clocking out,

---

[31] 729 F.Supp.2d 1269 (D.N.M. 2010).

[32] *Id*. at 1274.

[33] 808 F. Supp. 2d 1092 (E.D. Wis. 2011).

[34] *Id*. at 1095.

[35] *Id*. at 1094.

9

and during their meal break are independent rights conferred by the Arkansas Minimum Wage Act, not the Collective Bargaining Agreement. They are independent, non-negotiable rights that devolve upon the workers notwithstanding their membership in a union. Indeed, there is absolutely no provision in the parties' Collective Bargaining Agreement that addresses the time spent by employees for donning and doffing–work performed "off the clock."

Gerber argues that Ark. Code Ann. §11-4-205 requires the court to "interpret the collective bargaining relationship between Gerber and the Union, as embodied in their Collective Bargaining Agreement and their negotiations and practices that define the scope of that Collective Bargaining Agreement."[36] Even if the Collective Bargaining Agreement did address the issues in this case, Gerber's argument would stretch the plain meaning of Ark. Code Ann. §11-4-205 too far. The provision simply states that the statute shall not diminish the rights of employers and employees to "bargain collectively." It absolutely does not permit the employer and employees to bargain for provisions that are not in compliance with the minimum requirements of the Act.

Gerber's reference in its Notice of Remand to "negotiations and practices that define the scope of the Collective Bargaining Agreement" tacitly acknowledges that there are no actual terms of the Agreement for the court to interpret in this case. Gerber is in essentially the same position as the defendant in *Williams v. NFL*: it cannot "point to a specific provision which must be interpreted." The most Gerber can argue is that the Agreement contains *implied* terms that contradict the AMWA, and that those implied terms constitute a defense to their violations of the Act. That argument must fail for two reasons. First, Ark. Code. Ann. §11-4-218 clearly states, "*any agreement* between the employee and

---

[36] Notice of Removal (Doc. 1) ¶ 13, p. 14 (7/6/2012).

employer to work for less than minimum wages *shall be no defense*." Second, as the Supreme Court held in *Caterpillar*, defenses that arise under a collective bargaining agreement do not warrant preemption.

Because the claims in this case arise independently of the parties' Collective Bargaining Agreement and because adjudication of those claims will not require the court to interpret any terms of the Agreement, the Plaintiffs' claims are not preempted by the Labor Management Relations Act.

> 5. **The Plaintiffs are Seeking Relief on Behalf of a Class of Employees, Some of Whom are Not Covered by any Collective Bargaining Agreement.**

Defendant argues that all of the named Plaintiffs are members of a bargaining unit covered by a collective bargaining agreement.[37] Defendant then argues that the Plaintiffs' claims are preempted by Section 301 of the LMRA because the claims are based on conduct that is specifically governed by labor agreements.[38] This argument overlooks the fact that the Plaintiffs have brought this action as a collective action, pursuant to Ark. Code Ann. §11-4-201, *et seq.,* on behalf of themselves and on behalf of all similarly situated employees currently and formerly employed by Defendant. The collective bargaining agreements cover only certain employees, not all of Defendants' employees. Union membership is estimated at roughly seventy percent (75%) of the Gerber employees. Therefore, the claims of all potential plaintiffs who are not members of a union would not be preempted and the preemption argument fails as to them. See *Gordon v. Kaleida Health*[39] (To the extent any plaintiff or potential plaintiff is not covered by a CBA, there can be no preemption of his or her state wage claim.).

---

[37] Notice of Removal (Doc. 1), p. 2.

[38] *Id*. at 3.

[39] 2009 WL 4042929, 5 (W.D.N.Y. 2009).

**B.      Diversity Jurisdiction**

The Defendant's second claimed basis for removal is diversity jurisdiction. The Defendant invokes both traditional diversity jurisdiction under 28 U.S.C. § 1332(a) and diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Section 1332(a) "requires complete diversity, that is where no defendant holds citizenship in the same state where any plaintiff holds citizenship."[40]

Contemporaneously with their Motion to Remand, the Plaintiffs are filing an amended complaint that adds Patrick Murray as a defendant. Mr. Murray is plant manager of Gerber's Fort Smith facility and is a citizen of Arkansas.[41] The addition of one or more local managers as defendants was anticipated in the Plaintiffs' original complaint.[42] Mr. Murray is a proper defendant because he is the Plaintiffs' employer for the purposes of the AMWA and is liable for their damages.[43] With the addition of Mr. Murray, two Plaintiffs and one Defendant share Arkansas citizenship.[44] Therefore, the parties are not completely diverse and this Court lacks jurisdiction under 28 U.S.C. § 1332(a). In addition to diversity of the parties, both 28 U.S.C. § 1332(a) and § 1332(d) require the removing party to prove that a statutory minimum dollar amount is in controversy.

---

[40] *Cascades Dev. of Minn., LLC v. Nat'l Specialty Ins.*, 675 F.3d 1095, 1098 (8th Cir. 2012) (quoting *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 445 (8th Cir. 2010)) (internal quotation marks omitted).

[41] First Amended Complaint, ¶ 16 (7/22/2012).

[42] Complaint (Doc. 3), 12 (7/6/2012) (requesting "leave to amend to add other defendants who meet the definition of 'employer' as defined under the AMWA").

[43] Ark. Code Ann. 11-4-203(4)(A); *see also* notes 72-73, *infra*, and accompanying text.

[44] See *Id*. at ¶¶ 7, 8, 16.

12

### 1. The Defendant has Failed to Prove the Minimum Amount in Controversy for Diversity Jurisdiction.

Under 28 U.S.C. § 1332(a), United States district courts have original jurisdiction of controversies between citizens of different states "where the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs."[45] Where a case originated in state court, "the party seeking removal based on diversity of citizenship bears the burden of proving, by a preponderance of the evidence, that the matter in controversy exceeds the sum or value of $75,000."[46] The minimum amount in controversy specified by 28 U.S.C. 1332(a) applies to the plaintiffs individually, not in the aggregate.[47] That is, at least one plaintiff's individual claim must exceed $75,000 in order to confer jurisdiction on the district court.[48]

The Class Action Fairness Act ("CAFA")[49] is an exception to the rules of diversity jurisdiction provided by 28 U.S.C. 1332(a) in that it "abrogates the rule against aggregating claims" under certain circumstances.[50] Specifically, CAFA allows for federal jurisdiction of class actions where "the matter in controversy exceeds the sum or value of $ 5,000,000, exclusive of interest and costs," and "any member of a class of plaintiffs is a citizen of a State different from any defendant."[51] "Although CAFA expanded federal jurisdiction over class actions, it did not alter the general rule that the party seeking to remove a

---

[45] 28 U.S.C. § 1332(a).

[46] *Usery v. Anadarko Petroleum Corp.*, 606 F.3d 1017, 1018 (8th Cir. 2010) (internal quotation marks omitted).

[47] *Burks v. Acceptance Cas. Ins. Co.*, Case No. 5:11-CV-00148-JLH, 2011 U.S. Dist. LEXIS 88896, 8 (E.D. Ark. 8/9/2011) (citing *Crenshaw v. Great Cent. Ins. Co.*, 482 F.2d 1255, 1259 (8th Cir. 1973).

[48] *Id.*

[49] 28 U.S.C. 1332(d).

[50] *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 571 (2005).

[51] 28 U.S.C. 1332(d)(2).

case to federal court bears the burden of establishing federal jurisdiction."[52] As with traditional diversity jurisdiction, "a party seeking to remove under CAFA must establish the amount in controversy by a preponderance of the evidence."[53] The removing party bears this burden regardless of the amount in controversy, if any, specified in the complaint.[54]

Removal jurisdiction is not favored. The Eighth Circuit has mandated that "[f]ederal courts are to resolve all doubts about federal jurisdiction in favor of remand and are strictly to construe legislation permitting removal."[55] Therefore, the Western District of Arkansas has observed that "a removing defendant has a more onerous burden to establish the requisite amount in controversy than does a plaintiff who initially files a case in federal court."[56] A party seeking removal must meet its burden to establish jurisdiction with "competent proof,"[57] which is to say admissible evidence.[58] "A conclusory allegation in the notice of removal that the jurisdictional amount is satisfied, without setting forth the underlying facts supporting such an assertion, is insufficient to meet the defendant's burden."[59]

---

[52] *Westerfield v. Independent Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010).

[53] *Bell v. Hershey Co.*, 557 F.3d 953, 958 (8th Cir. 2009).

[54] *Id.*; *see also Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001) ("Where, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement.").

[55] *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 968 (8th Cir. 2007) (internal quotation marks omitted).

[56] *Russell v. B-Sew Inn, LLC*, Case No. 08-5149, 2008 U.S. Dist. LEXIS 92971, 4-5 (W.D. Ark. 11/4/2008).

[57] *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (U.S. 1936); *see also James Neff Kramper Family Farm P'ship v. IBP, Inc.*, 393 F.3d 828, 833 (8th Cir. 2005) (remanding *sua sponte* upon finding "there is simply no competent evidence the damages were anything more than a nominal sum.").

[58] *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 542 (7th Cir. 2006) ("admissible evidence (that's what 'competent' proof means)").

[59] *Williams*, 269 F.3d at 1319-20 (citing cases from the Fifth, Ninth, Tenth, and Eleventh Circuits).

Because the Plaintiffs' Complaint does not specify the amount of damages, the Defendant must come forward with competent proof of the requisite amount in controversy to invoke the jurisdiction of this Court. The Defendant has presented no evidence from which the Court could conclude that there is $5 million, $75,000, or even $1 in controversy. The Defendant's Notice of Removal states, "the matter in controversy, exclusive of interest and costs, exceeds the sum or value of Seventy-five Thousand Dollars ($75,000) for at least one named plaintiff" and "the matter in controversy, exclusive of interest and costs, exceeds the sum or value of Five Million Dollars."[60] These conclusory allegations are not evidence, and the Notice of Removal cites to none. Because there is no competent proof of the amount in controversy, this case should be remanded to the Circuit Court for Sebastian County, Arkansas.

### 2. The Class Action Fairness Act Does Not Apply to Local Controversies.

Even if the removing party can prove all elements necessary to confer federal jurisdiction under CAFA, the court must decline to exercise its jurisdiction if the party requesting remand can in turn prove that the case represents a local controversy better suited to adjudication in state court. The Western District of Arkansas articulated the elements of the local-controversy exception in *Stevens v. Diversicare Leasing Corp.*:[61]

> a district court shall decline to exercise jurisdiction over a class action in which:
>
> (1) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>
> (2) at least 1 defendant is a defendant -- (a) from whom significant relief is sought by members of the plaintiff class; (b) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and (c) who is a citizen of the State in which the action was originally filed; and

---

[60] Notice of Removal (Doc. 1), 4 (7/6/2012).

[61] Case No. 09-6008, 2009 U.S. Dist. LEXIS 41578, (W.D. Ark. 5/4/2009).

> (3) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
>
> (4) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons.[62]

The *Stevens* court went on to explain that for the purposes of the second element, the local defendant from whom "significant relief" is sought and whose conduct "forms a significant basis for the claims" can be a local manager of a foreign corporation. *Stevens* was a class action filed on behalf of nursing home residents alleging that the nursing home failed to properly staff the facility and maintain a clean, safe, environment. The Defendants removed to the Western District of Arkansas on the basis of CAFA and the Plaintiffs invoked the local-controversy exception.[63] The Defendants argued that the exception did not apply because there was no Arkansas-based "significant defendant." That is, the owner of the nursing home was a Tennessee corporation and the sole Arkansas defendant was the home's administrator, Steven Levato.[64]

The *Stevens* court concluded that Levato was a significant defendant as defined by CAFA. First, the court concluded that even though the plaintiffs had no statutory basis for seeking relief from Levato, "there [was] arguably a reasonable basis for predicting that state law might impose liability on Levato" under common law theories.[65] Next, the court determined that "Levato's administrative duties of hiring and maintaining adequate staffing and overseeing the operation of the Center" placed his "actions or lack

---

[62] *Id*. at 7-8 (citing 28 U.S.C. § 1332(d)(4)(A)).

[63] *Stevens*, 2009 U.S. Dist. LEXIS 41578. 2-4.

[64] *Id*. at 8-9.

[65] *Id*. at 10.

thereof . . . at the heart of [the] case."[66] Because the defendants included an Arkansas-based member of management whose acts or omissions had contributed to the actionable harm and who could conceivably be held liable for the damages, the court held that the local-controversy exception applied and remanded the case to state court.[67]

All of the elements of the local-controversy exception are present in this case. The third and fourth elements may be readily dispensed with: All the injuries complained of occurred at the Gerber plant in Fort Smith, Arkansas,[68] and an online search discloses no similar actions against Gerber in Arkansas or anywhere else within the last three years.

Complete information about the identity and location of the members of the Plaintiff class is in the hands of the Defendant, but the Plaintiffs are able to prove the first element–that more than two-thirds of the class are Arkansas citizens–by a preponderance of the evidence. The most telling evidence is also the most obvious: the class is limited to employees of the Gerber plant in Fort Smith, Arkansas,[69] and it stands to reason that the overwhelming majority of employees live in the same state where they work. Also, in the course of preparing for this litigation the Plaintiffs reached out to potential class members and obtained contact information for a large sample of the class. Eighty-five percent of this representative sample (158 of 186) are citizens of Arkansas.[70] Therefore, the first element of the local-controversy exception is satisfied.

---

[66] *Id*.

[67] *Id*. at 14.

[68] First Amended Complaint, ¶ 1 (7/22/2012).

[69] *Id*.

[70] See the Address List attached hereto as Exhibit 1. The list is a summary of information on contracts and questionnaires in the possession of Plaintiffs' counsel.

Lastly, the Defendants include an Arkansas citizen from whom significant relief is sought and whose actions form a significant basis of the Plaintiffs' claims. As explained above, Patrick Murray, plant manager of Gerber's Fort Smith facility and Arkansas citizen, is now a defendant in this matter. Mr. Murray is the highest ranking member of management at the facility and ultimately responsible for scheduling the Plaintiffs' work time and recording their hours worked.[71] As a "person . . . acting directly or indirectly in the interest of an employer in relation to an employee,"[72] Mr. Murray is Plaintiffs' employer within the meaning of the AMWA and is therefore equally liable with his co-defendant for all of the Plaintiffs' damages.[73] Furthermore, Mr. Murray's acts or omissions in requiring members of the plaintiff class to perform work off the clock are at the heart of the Plaintiffs' claims.

Because this case represents a local controversy in which greater than two-thirds of the plaintiff class and a defendant from whom significant relief is sought are Arkansas citizens, and because all of the injuries incurred by the plaintiff class occurred within Arkansas, 28 U.S.C. § 1332(d)(4) requires the Court to decline jurisdiction and remand this case to the state court where it originated.

### III.
### CONCLUSION

This court lacks jurisdiction over Plaintiffs' state wage claims and Plaintiffs' complaint should be remanded to state court pursuant to 28 U.S.C. § 1447. Contrary to Defendant's arguments in its Notice of Removal, Plaintiffs' state claims are not preempted by § 301 of the LMRA because they are legally

---

[71] *Id.* at ¶¶ 30-31.

[72] Ark. Code Ann. 11-4-203(4)(A); see also *Perez-Benites v. Candy Brand, LLC*, 2011 U.S. Dist. LEXIS 55003, 26-31 (W.D. Ark. 5/20/2011) (finding that members of corporate management, including one defendant whose title was "plant manager," were employers within the meaning of identical language in the Fair Labor Standards Act).

[73] Ark. Code Ann. 11-4-218(a)(1) ("Any employer who pays any employee less than the minimum wages, including overtime compensation . . . to which the employee is entitled under or by virtue of this subchapter shall . . . be liable to the employee affected . . .").

and factually independent of the collective bargaining agreements. Moreover, the state claims are brought as a collective action on behalf of current and former employees of Defendant, many of whom have never been a member of the union. Therefore, any argument that the claims of non-union employees are preempted is fundamentally flawed.

Diversity jurisdiction does not exist in this case because the Defendant has not proved the minimum amount in controversy under any diversity statute. Even if the Defendant could prove that jurisdiction existed under the Class Action Fairness Act, the local-controversy exception to that Act would require remand.

The Motion for Remand should be granted. Plaintiffs should be awarded attorneys' fees and costs pursuant to 28 U.S.C. § 1447(c) (An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal).

Respectfully submitted,

/s/ Joe D. Byars
Joe D. Byars, Jr. – AR Bar #95107
jdbyars@cox-internet.com
CHRISTIAN, BYARS & HICKEY, P.L.L.C.
Attorneys at Law
502 Garrison Avenue
Post Office Box 1725
Fort Smith, Arkansas 72902-1725
Tel. 479.782.9147
Fax 479.782.3623

And

John T. Holleman - AR Bar #91056
jholleman@johnholleman.net
Maryna O. Jackson - AR Bar #2009111
maryna@johnholleman.net
Amber R. Schubert - AR Bar #2009150
amber@johnhollema.net
Stephen Rauls, AR Bar #2011170

        steve@johnholleman.net
        HOLLEMAN & ASSOCIATES, P.A.
        200 West Capitol Avenue, Suite 1620
        Little Rock, AR 72201
        Tel. 501.975.5040
        Fax 501.975.5041

## CERTIFICATE OF SERVICE

      I, Joe D. Byars, Jr., do hereby certify on this 23rd day of July, 2012, that the above pleading was electronically transmitted to the Clerk of the Court using the ECF System for filing. The Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Ms. Carolyn Witherspoon
Cross, Gunter, Witherspoon & Galchus, P.C.
500 President Clinton Avenue, Suite 200
Little Rock, Arkansas 72201
cspoon@cgwg.com

            */s/ Joe D. Byars, Jr.*
            Joe D. Byars, Jr.