IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DAVID HEWITT II; AARON
JOHNSON; JAMES LANE; RALPH
LAROSA, JR.; and JERRY OSBORNE;
Individually and on Behalf of All Others
Similarly Situated

                                                        PLAINTIFFS

v.                                Case No. 2:12-CV-02152

GERBER PRODUCTS COMPANY
d/b/a NESTLE' INFANT NUTRITION
d/b/a NESTLE' NUTRITION USA
d/b/a NESTLE' NUTRITION USA –
INFANT NUTRITION d/b/a NESTLE'
NUTRITION USA – PERFORMANCE
NUTRITION; and PATRICK MURRAY                        DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiffs' Motion to Remand (Doc. 6) and supporting documents, and Defendant Gerber Products Company's ("Gerber") Response in Opposition (Doc. 18) and supporting documents.  Plaintiffs also filed a Reply (Doc.  21) without leave of Court, which the Court, nevertheless, has read and considered.  Plaintiffs dispute the existence of both federal question and diversity jurisdiction in this case, contending that their claims arise independently under state law, the parties are not diverse, and the amount in controversy does not meet the jurisdictional requirements. For the reasons described herein, Plaintiffs' Motion to Remand (Doc. 6) is **GRANTED**, and this case is remanded to the Circuit Court of Sebastian County, Arkansas.

### I. Background

Named Plaintiffs are hourly employees who are or were employed by Gerber at its Fort Smith, Arkansas, baby food manufacturing and processing  facility (the "Facility").  On June 6,

2012, Plaintiffs filed this putative collective action against Gerber in Sebastian County Circuit Court, asserting state law claims for unpaid wages under the Arkansas Minimum Wage Act ("AMWA") and for unjust enrichment. Plaintiffs allege they spent time donning and doffing protective gear, sanitizing clothing and equipment, washing their hands, and walking to and from their work stations for which they were not compensated, and also that they were periodically required to work through their lunch breaks without compensation. (Doc. 3, ¶ 3). Plaintiffs aver that they are entitled to compensation for this time under Arkansas state law. According to Plaintiffs, Gerber violated the AMWA and state common law by failing to fully compensate employees for time worked in excess of 40 hours per week.

On July 6, 2012, Gerber filed a Notice of Removal in this Court, alleging three theories of subject matter jurisdiction. (Doc. 1). First, Gerber asserts that Plaintiffs' claims raise a federal question under 28 U.S.C. § 1331 because they are completely preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, which grants exclusive federal jurisdiction over state law claims that are based on or require interpretation of a collective bargaining agreement ("CBA"). Second, Gerber contends removal is proper under 28 U.S.C. § 1332 on grounds of traditional diversity jurisdiction. Third, Gerber argues diversity jurisdiction is proper under the Class Action Fairness Act of 2005 ("CAFA").

Plaintiffs moved to remand on July 23, 2012. Contemporaneously with their Motion, Plaintiffs filed an Amended Complaint adding Patrick Murray, plant manager of the Facility and an Arkansas citizen, as a defendant. (Doc. 7). In support of remand, Plaintiffs argue that their claims arise independently under Arkansas law and are not completely preempted, that diversity jurisdiction does not exist because the parties are no longer completely diverse and Gerber has failed to prove

the requisite amount in controversy, and that even if the Court finds that it has jurisdiction pursuant to CAFA, the local-controversy exception would require the Court to decline to exercise jurisdiction.

## II. Legal Standard

A defendant in state court may remove the case to federal court if the defendant can demonstrate that the federal court has original jurisdiction over the case. 28 U.S.C. § 1441(a). Once a case is removed to federal court, a plaintiff may move to remand to state court if the federal court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). Removal cases are construed more narrowly than originally filed cases to protect the plaintiff's choice of forum and to protect the state courts from usurpation by federal courts. *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108-109 (1941); *Hurt v. Dow Chemical Co.,* 963 F.2d 1142, 1145 (8th Cir. 1992). The Court must strictly construe the federal removal statute and resolve any ambiguities about federal jurisdiction in favor of remand. *Transit Casualty Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997).

## III. Discussion

Gerber claims this Court has removal jurisdiction under three separate theories: federal question jurisdiction, traditional diversity jurisdiction, and CAFA jurisdiction. Plaintiffs dispute each theory, and argue that this Court must remand to state court for lack of subject matter jurisdiction. Each of these three theories of federal jurisdiction is analyzed below.

### A.  Federal Question Jurisdiction

Federal courts have original jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. In the usual case, the contents of a well-pleaded complaint determine federal question jurisdiction. *Caterpillar Inc. v. Williams*, 482 U.S.

-3-

386, 393 (1987).  Federal preemption is ordinarily a substantive defense to the plaintiff's suit; as such, it does not appear on the face of a well-pleaded complaint, and therefore does not authorize removal to federal court.  *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987).  However, "[o]ne corollary of the well-pleaded complaint rule . . . is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character."  *Id.* at 64-65.  Complete preemption converts an ordinary state law complaint into one asserting a federal claim. *Caterpillar*, 482 U.S. at 393.  The complaint is viewed as stating a federal claim from the beginning; therefore, complete preemption provides a valid basis for removal to federal court.  *Carlson v.  Arrowhead Concrete Works, Inc.*, 445 F.3d 1046, 1051 (8th Cir. 2006).

Section 301 of the LMRA is one of the few statutes to which the complete preemption doctrine undoubtedly applies.  It provides: "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."  29 U.S.C. § 185(a).  "[T]he preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 23 (1983) (internal quotation marks omitted).  "[W]here a complaint raises issues to which federal law applies with complete preemptive force, the Court must look beyond the face of the complaint in determining whether remand is proper."  *Austin v. Int'l Bhd. of Elec. Workers, AFL-CIO*, 2012 WL 685416, at *1 (E.D. Mo. Mar. 2, 2012) (citing *Williams v. Nat'l Football League*, 582 F.3d 863, 874 (8th Cir. 2009)).

-4-

As a threshold issue, the Court must determine whether there is a clear indication that the Plaintiffs are covered by a CBA. *See Pruell v. Caritas Christi*, 645 F.3d 81, 83 (1st Cir. 2011) ("[R]emoval and dismissal based on complete preemption under the LMRA must *start* with a plaintiff *covered* by a CBA for it is that fact that establishes subject matter jurisdiction in the federal district court.") (citing *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists and Aerospace Workers*, 390 U.S. 557, 560 (1968)).   Plaintiffs' Complaint does not mention either union membership or the existence of a CBA; however, Gerber alleges in its Notice of Removal that Plaintiffs are represented by Lodge 260 International Association of Machinists and Aerospace Workers, AFL-CIO (the "Union") and that Gerber and the Union are parties to a CBA that addresses wages, hours, and terms and conditions of employment.  (Doc. 1, ¶¶ 3, 4).  Plaintiffs do not dispute these allegations, but instead argue that their claims arise independently of any CBA and also that Gerber's preemption argument must fail as to any potential plaintiffs who are not members of the Union.  (Doc. 7, p. 11).  As a general rule in class action suits, the court looks to the status of the named plaintiffs and their claims.  *Pruell*, 645 F.3d at 83 (citing 5 W. Moore et al., *Moore's Federal Practice* § 23.63[1][b] (3d ed. 2011)).  Named Plaintiffs do not deny that they are members of a Union, and Gerber's Human Resources Manager submitted a sworn affidavit stating that each of the named Plaintiffs is a member of the Union.  (Doc. 19, ¶ 4).  The Court therefore finds that, for the purpose of this Motion, Plaintiffs are members of the Union and are subject to the CBA between the Union and Gerber.

Section 301 "does not preempt every employment dispute, and it does not preempt all other disputes concerning CBA provisions." *Miner v. Local 373*, 513 F.3d 854, 865 (8th Cir. 2008).  For complete preemption to be a valid basis for removal jurisdiction in this case, at least one of

-5-

Plaintiffs' state law claims must arise under § 301.  A state claim arises under § 301 when "the heart of the state law complaint is a . . . clause in the collective bargaining agreement."  *Avco Corp.*, 390 U.S. at 558.  The Eighth Circuit adopted a narrow approach to § 301 preemption, where the inquiry is only "whether the claim itself is necessarily grounded in rights established by a CBA."  *Meyer v. Schnucks Mkts., Inc.*, 163 F.3d 1048, 1051 (8th Cir. 1998); *see also Caterpillar*, 482 U.S. at 398-99 ("When a plaintiff invokes a right created by a collective-bargaining agreement, the plaintiff has *chosen* to plead what we have held must be regarded as a federal claim, and removal is at the defendant's option.").  The analysis begins with the claim itself and involves a two-step approach to determine if the claim is sufficiently independent to survive complete preemption. *Williams*, 582 F.3d at 874 (citations omitted).  First, a state law claim is completely preempted if it is directly based on a provision of the CBA, meaning that the CBA provision at issue actually sets forth the right upon which the claim is based.  *Id.*  Second, § 301 complete preemption applies where a state law claim "is dependent upon an analysis of the relevant CBA," meaning that the resolution of a plaintiff's state law claim requires interpretation of a provision of the CBA. *Id.*

Plaintiffs' Complaint sets forth two claims: one based on Arkansas statutory law, and one based on the Arkansas common law of unjust enrichment.  "Complaints alleging a violation of state law without asserting a breach of the CBA have been found not preempted by federal law." *Carlson v. Arrowhead Concrete Works, Inc.*, 445 F.3d 1046, 1051 (8th Cir. 2006).  The Court finds that neither claim is directly based on a provision of the CBA.  The Complaint does not reference the CBA or implicate any reliance on a right established under the CBA.  Plaintiffs' AMWA claim derives from an alleged right to compensation based on Ark. Code Ann. §§ 11-4-218(a)(1) and 11-4-211.  Plaintiffs' unjust enrichment claim arises out of Arkansas common law, which provides that

a party who receives the benefit of services must compensate the party who performed the services in good faith. *Dews v. Halliburton Indus., Inc.*, 708 S.W.2d 67, 69 (Ark. 1986) (citing *Dunn v. Phoenix Village, Inc.*, 213 F.Supp. 936 (W.D. Ark.1963)); *see also Hatchell v. Wren*, 211 S.W.3d 516, 522 (Ark. 2005) (describing the elements of a cause of action for unjust enrichment). Moreover, Gerber fails to point to any specific provision of the CBA that sets forth the rights upon which Plaintiffs' claims are based. Thus, the Court finds that Plaintiffs' claims are not completely preempted on this basis.

The parties' main arguments are in regard to the second step of analysis, as to whether Plaintiffs' claims are dependent on an interpretation of the CBA. For complete preemption to exist, "the [state law] claim must require the interpretation of some specific provision of a CBA." *Meyer*, 163 F.3d at 1051. As mentioned above, Gerber fails to point to any specific provision of the CBA that is at issue. In fact, Gerber points out that the issue of compensation for donning and doffing protective gear was raised and rejected during CBA negotiations, which leads the Court to infer that the CBA does not address the issue at all. (Doc. 18, p. 9, n.5). Gerber provided the Court with portions of the relevant CBA. (Doc. 19-1). Based on the provided material, there is no indication that time spent walking, washing, or donning and doffing gear is addressed as either compensable time or as time specifically excluded from compensation under the CBA. If the CBA is silent on the issue, there is no provision of the CBA that requires interpretation by the Court, and Plaintiffs' claims are not completely preempted. The Court concludes that there is no provision of the CBA that must be interpreted to resolve Plaintiffs' claims.

Even if the CBA were to address compensation for the disputed time periods, Plaintiffs' claims arise independently under state law and are therefore not completely preempted. Plaintiffs'

Complaint sets forth an AMWA claim and a common law claim for unjust enrichment, both of which are based on the premise that Arkansas state law provides all employees with a minimum, guaranteed right to compensation for time worked.  Plaintiffs contend that Arkansas substantive law provides all individual employees with a right to be paid for all time worked, which, Plaintiffs argue, includes compensation for time spent walking to and from work stations, washing their hands, and donning and doffing protective equipment.  Gerber argues that Arkansas law does not require compensation for these activities.  The ultimate issue is whether or not Plaintiffs are entitled to compensation for those activities under state law, regardless of what is provided under the CBA.

Gerber contends that, because the AMWA does not explicitly require employers to pay employees for time spent walking or donning and doffing their clothing, any entitlement to overtime compensation for those periods must arise under the parties' CBA.  (Doc. 18, pp. 3-4).  The Court disagrees. While the AMWA does not explicitly mandate compensation for walking or donning and doffing time, it also does not expressly exclude compensation for that time, either.  Arkansas law requires employers to compensate hourly workers at a rate not less than one and one-half (1 ½) times their regular rate of pay for all hours worked in excess of 40 per week.  Ark. Code Ann. § 11-4-211. What must follow is that state courts are to interpret the statute to determine whether or not the contested time periods are compensable time.  The AMWA applies to all employees, whether or not they are members of a union.  It is a statute of general application.

The Court is not persuaded by the case law cited by Gerber in support of its argument that any entitlement to compensation for donning and doffing time directly arises under the parties' CBA.  Gerber relies on *Curry v. Kraft Foods Global, Inc.*, an unreported Illinois case that held § 301 preempted the plaintiffs' wage and hour claims because the CBA created the right to overtime

-8-

compensation, even though neither the state statute nor the CBA explicitly indicated whether donning and doffing time was compensable. 2010 WL 4338637, at *6 (N.D. Ill. Oct. 25, 2010). The Court finds a more recent reported case from the same district persuasive. In *Whitmore v. Kraft Foods Global, Inc.*, the United States District Court for the Northern District of Illinois disagreed with its earlier decision in *Curry*. 798 F. Supp. 2d 917, 923 n.4 (N.D. Ill. 2011). The Illinois Minimum Wage Act ("IMWA") did not explicitly mention donning and doffing, nor did the court find any Illinois cases that held that doffing and donning must be compensated. *Whitmore*, 798 F. Supp. 2d at 922. Even so, the court determined that the IMWA could, by its own force, require compensation for donning and doffing time, because the statute's use of broad language required interpretation to determine whether a specific activity is or is not included within compensable time. *Id.* In the instant case, Plaintiffs argue and the Court agrees that the issue is one of statutory interpretation, not contract interpretation. Plaintiffs do not seek a determination as to the appropriate wage under the CBA; they seek to recover wages allegedly due under state statutory and common law. Plaintiffs' claims hinge on whether they, as individual employees, are entitled to compensation under Arkansas law. If the state court determines that they are not entitled to compensation, their claims fail; however, this is a separate, unrelated issue to the issue of federal preemption. *See Mitchell v. JCG Indus.*, 842 F. Supp. 2d 1080, 1086 (N.D. Ill. 2012) ("[T]he alleged absence of a meritorious basis to bring the claim . . . is a separate issue from preemption."). The other cases cited by Gerber are unpersuasive, as they either dealt with § 301 preemption as a defense, rather than as a basis for removal, or included a separate federal claim that served as the basis for removal. It is important to distinguish between complete preemption and ordinary or traditional preemption. The former is a jurisdictional matter, while the latter provides a substantive defense to a plaintiff's state

law claim but does not alter the jurisdiction of the federal court. *Chapman v. Lab One*, 390 F.3d 620, 624 (8th Cir. 2004).

Gerber relies heavily on the broad language in the AMWA's collective bargaining exception. Under Ark. Code Ann. § 11-4-205, "[n]othing in [the AMWA] shall be deemed to interfere with, impede, or in any way diminish the right of employers and employees to bargain collectively through representatives of their own choosing in order to establish wages or other conditions of work." According to Gerber, this makes employee minimum wage rights fully negotiable in that a CBA can establish either lower or higher standards than those provided under the AMWA. Whether or not the broad language in the collective bargaining exception allows a CBA to set lower standards than those set forth in the AMWA is purely a matter of statutory interpretation, and is not relevant to the jurisdictional question at issue here.

In conclusion, the parties have a dispute over interpretation and application of Arkansas state law, not over the interpretation of a provision in the CBA. The issue is whether or not Plaintiffs are entitled to compensation for time spent walking, washing, and donning and doffing under either the AMWA or the common law of unjust enrichment. This is a matter more properly decided by a state court. The issue does not require analysis of any provision of the CBA and does not support § 301 complete preemption as a basis for asserting federal question jurisdiction. Therefore, the Court finds that it does not have jurisdiction over this case under § 1331. This finding does not prevent Gerber from asserting § 301 preemption as a defense to Plaintiffs' claims in state court. *See Caterpillar*, 482 U.S. at 398-99 ("When a defense to a state claim is based on the terms of a collective-bargaining agreement, the state court will have to interpret that agreement to decide whether the state claim survives.").

**B. Traditional Diversity Jurisdiction**

Under 28 U.S.C. § 1332(a)(1), federal district courts have original jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states." As the party invoking federal diversity jurisdiction, Gerber has the burden of proving by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum. *Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009) (citation omitted). In putative class action cases, removal is proper if a defendant can show, by a preponderance of the evidence, that one plaintiff meets the amount-in-controversy requirement, as the Court can exercise supplemental jurisdiction over the other plaintiffs' claims under 28 U.S.C. § 1367. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549 (2005). Plaintiffs argue that jurisdiction under § 1332(a)(1) is improper because diversity of citizenship no longer exists and the $75,000 statutory minimum for amount in controversy has not been met.

Upon consideration, the Court finds that Gerber failed to meet its burden of proving that the amount in controversy exceeds $75,000. The Complaint does not seek a specified sum, and Gerber's Notice of Removal fails to sufficiently plead the requisite amount. Neither party asserts even an estimate of any individual plaintiff's potential recovery. Gerber's Notice of Removal merely states a conclusory allegation that the amount is met, and provides no factual basis for this assertion; Gerber's Response in Opposition to Plaintiffs' Motion to Remand omits mention of this issue altogether. Therefore, Gerber has not met its burden of proving that the amount in controversy is satisfied for the purposes of traditional diversity jurisdiction under § 1332 (a)(1). Since remand is appropriate on the grounds that the requisite amount in controversy was not met, the Court declines to address the issue of the Plaintiffs' joinder of a non-diverse party as a defendant.

-11-

### C. CAFA Jurisdiction

Under CAFA, federal district courts have original jurisdiction over class actions where there is minimal diversity of citizenship among the parties and "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332 (d)(2). However, this provision does not apply if there are fewer than 100 class members or potential class members. 28 U.S.C. § 1332 (d)(5)(B). A defendant seeking removal on grounds of CAFA jurisdiction must prove each of the jurisdictional elements by a preponderance of the evidence. *Bell*, 557 F.3d at 957. Once the initial jurisdictional requirements have been established, the burden shifts to the party seeking remand to establish that one of CAFA's express jurisdictional exceptions applies. *Westerfield v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010) (citations omitted).

As the party invoking federal jurisdiction, Gerber must prove by a preponderance of the evidence that there is minimal diversity, the matter in controversy is more than $5,000,000, and there are at least 100 potential class members. *See Bell*, 557 F.3d at 955. The parties do not dispute the existence of minimal diversity. Plaintiffs argue that remand is appropriate because Gerber failed to present any evidence tending to show the amount in controversy. Before this argument is addressed, the Court must determine whether or not the CAFA jurisdictional provision is applicable.

Both parties fail to acknowledge that for CAFA to apply, Gerber must demonstrate the existence of a class of at least 100 members. However, there is no adequate proof in the record as to the potential class size, and therefore Gerber failed to meet its burden of proof as to this requirement. Gerber's Notice of Removal erroneously states, "Plaintiffs allege...a putative class of some 650 or more persons." (Doc. 1, ¶ 9). In fact, the Complaint alleges the class size is unknown,

but the number of *all persons employed* by Gerber at the Fort Smith facility is 650.  (Doc. 3, ¶ 35).

Plaintiffs limit the class to "persons who were, are, or will be employed by Gerber as non-exempt,

hourly paid employees at the Facility."  (Doc. 3, ¶ 4).  Gerber provided no information regarding

the number of hourly workers employed by the Facility.  According to Gerber, the Court must

assume every employee at the Facility is a potential class member.  The Court declines to make such

an assumption.

Plaintiffs provided a list of 186 names and addresses of persons that they contend to be

potential class members.  (Doc. 7-1).  This list is described by Plaintiffs as "a summary of

information on contracts and questionnaires in the possession of Plaintiffs' counsel."  (Doc. 7, p. 17

n.70).  Gerber dismisses the list as an "unauthenticated spreadsheet," pointing out that there is no

evidence to establish that the individuals identified in the sample are actually representative of the

class as a whole, nor is there any evidence that the individuals identified in the list could qualify as

class members.  (Doc. 18, p. 15).  This list provides little, if any, proof as to potential class size.

Furthermore, Gerber failed to establish that the amount in controversy exceeds the

jurisdictional minimum of $5,000,000, exclusive of interest and costs.  While Gerber is not required

to prove an actual damage amount, it must provide the Court with factual evidence from which the

Court can conclude whether or not the jurisdictional amount is met.  *See Bell*, 557 F.3d at 959

("Under the preponderance standard, '[t]he jurisdictional fact . . . is not whether the damages are

greater than the requisite amount, but whether a fact finder might legally conclude that they are.'")

(quoting *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002)). The Court must engage in a "fact

intensive" inquiry to determine whether the preponderance standard has been met.  *Id.* Mere

speculation or conjecture on the part of the defendant as to the amount will not be sufficient to meet

the preponderance standard.  *See*, *e.g.*, *Thomas v. Southern Pioneer Life Ins. Co.*, 2009 WL 4894695, *2 (E.D. Ark. Dec. 11, 2009) (overbroad interpretation of proposed class rendered amount in controversy speculative); *Nowak v. Innovative Aftermarket Sys.*, 2007 WL 2454118, *5 (E.D. Mo. Aug. 23, 2007) (defendant's calculation offered no evidence indicating actual potential class members, nor the exact damage amount for each of those persons).

After careful consideration of all of the evidence, the Court finds that Gerber has failed to show by a preponderance of the evidence that the amount in controversy requirement is satisfied for CAFA jurisdiction.  Gerber's Notice of Removal contains conclusory allegations that the amount in controversy exceeds $5,000,000, exclusive of interests and costs, but provides no underlying factual basis for this assertion.  (Doc. 1, ¶¶ 11, 15).  In its Response in Opposition to Plaintiffs' motion, Gerber provides a calculation of damages based on a proposed class of 650 members, which is the total number of persons employed at the Facility, as opposed to limiting the calculation to the total number of potential class members.  In calculating the estimated value of Plaintiffs' claims, Gerber averred, "Defendants [sic] are requesting four hours per week of overtime pay for 650 employees for a three-year period." (Doc. 18, p. 12).  Gerber's calculation rests on the speculative assumptions that every single employee at its Facility was denied four hours of overtime pay every week, earned the same wage rate, and received the maximum amount of vacation each year.  Gerber offers no evidence regarding the size of the class or the number of former employees who are potential class members.  The Court finds that Gerber has not met its burden of proving that the amount in controversy exceeds $5,000,000.

In conclusion, there is great uncertainty about the potential class size and the amount in controversy in this case.  Any doubt as to federal jurisdiction must be resolved in favor of remand.

*In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010); *In re Bus. Men's Assur. Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993).  Gerber has not shown by a preponderance of the evidence either a potential class of at least 100 members or a controversy worth more than the jurisdictional minimum.  The Court finds that Gerber failed to establish the necessary jurisdictional elements to assert federal jurisdiction under CAFA, and therefore Plaintiffs' argument that the local-controversy exception applies need not be addressed.

## .  IV. Conclusion

The Court finds that Plaintiffs' state law AMWA claim and state common law claim are not completely preempted by § 301 of the LMRA, and therefore there is no basis for removal based on federal question jurisdiction under 28 U.S.C. § 1331.  The Court also finds that Gerber has not shown, by a preponderance of the evidence, that any plaintiff has an individual claim exceeding $75,000, as required for the Court to exercise diversity jurisdiction on the basis of 28 U.S.C. § 1332(a).  Nor has Gerber shown, by a preponderance of the evidence, that the putative class size is at least 100 members or that the aggregate damages claimed on behalf of the class exceed CAFA's jurisdictional minimum of $5,000,000.  Accordingly, Plaintiffs' Motion to Remand (Doc. 6) is hereby **GRANTED**.  This case shall be remanded forthwith to the Circuit Court of Sebastian County, Arkansas.

IT IS SO ORDERED this 6th day of November, 2012.

*/s/ P. K. Holmes,* III

P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE